## Commonwealth *ex rel.* Boyd *versus* The Jailer.
## Commonwealth *ex rel.* Mountz *versus* The Jailer.

1. A judge of one county has no authority to issue his warrant for the arrest or removal of a person charged with the commission of a misdemeanor in another county; *aliter* if the offence charged is a felony.

2. In misdemeanors, the means provided for the arrest and return of fugitives from justice, is a warrant issued by a justice of the peace of the county where the offence is alleged to have been committed, and endorsed by a justice of the county where the offender is found.

3. The Court of Quarter Sessions of one county have no power to order a defendant, charged with a misdemeanor, to be committed in default of bail for his appearance at the next Court of Quarter Sessions of another county.

4. One arrested upon a warrant issued by a justice of the peace of another county, and endorsed in the county where he is found, if the offence is bailable, may, at his option, give bail in the county where he is arrested, for his appearance at the court where the offence is triable.

5. The oath of a married woman will not sustain a warrant for the arrest of her husband for adultery; nor can a husband be a witness in a case against his wife for adultery.

THESE were two cases in which the parties were arrested on a charge of adultery. The informations were made by Jane Boyd, wife of George W. Boyd, before Thomas Steele, Esq., an alderman in the city of Pittsburgh, in September and October last, charging the parties with having committed the offence, but not stating the *venue*. Subsequently an application was made to the Court of Quarter Sessions of Allegheny county, on the 10th

[Commonwealth ex rel. Boyd *v.* The Jailer.]

day of November, showing on the oath of Jane Boyd, the wife of George W. Boyd, that the offence was committed in Washington county. On the hearing of this application, the court, on motion of A. B. M'Calmont, Esq., discharged the parties from their recognizance, to appear at the next term of the said court, and warrants being produced, issued by a justice of the peace of Washington county, the court committed the parties in default of bail in the sum of one thousand dollars; and on the Friday following, the President Judge issued a warrant for the removal of the prisoners to the common jail of Washington county. Whereupon, the prisoners applied to the Supreme Court for writs of *habeas corpus,* which were granted.

*Black,* for relators.

*Hamilton,* for respondent.

The opinion of the court was delivered November 17, 1855, by KNOX, J.—We learn from the return to this court, that the petitioner is in the custody of the sheriff, by virtue—

1. Of a warrant issued by the Hon. W. B. M'Clure, President of the Common Pleas and Quarter Sessions of Allegheny county, dated the 12th day of November, A. D. 1855.

2. Of a warrant issued by J. L. Judson, Esq., a justice of the peace of the county of Washington, endorsed by Thomas Steele, Esq., an alderman of the city of Pittsburgh. And,

3. By virtue of an order made by the Court of Quarter Sessions of Allegheny county, on the 15th day of November, A. D. 1855.

If either of these is sufficient to authorize the detention of the petitioner, she must be remanded; otherwise, she is entitled to her discharge.

The warrant of the President Judge is directed to the sheriff of Allegheny county; and after reciting that the petitioner is imprisoned in the common jail of Allegheny county, upon a charge of adultery, committed in Washington county, directed the sheriff to take the body of the petitioner and convey her to the common jail of Washington county, and to deliver her in custody of the keeper of said jail.

If the offence charged against the petitioner were a felony, the warrant of the judge would be authorized by the third section of the Act of 4th of April, A. D. 1807; but neither this act, nor any other to be found in our statute-book, authorizes a judge of one county to issue his warrant for the arrest or removal of any person, charged with having committed a misdemeanor in another county; nor has he such power at common law, for the simple reason that he cannot inquire into the commission of offences be-

[Commonwealth ex rel. Boyd *v.* The Jailer.]

yond his jurisdiction. In the higher grade of offences, such as felony, the law requires the aid of a judge, and the sheriff of the county where the offender is found, to return him to the county where the crime was committed; but in misdemeanors the means provided for the arrest and return of fugitives from justice, is a warrant issued by a justice of the peace of the county where the offence is alleged to have been committed, and endorsed or backed by a justice or alderman of the county where the offender is found. As the offence charged in the warrant now under consideration, was a misdemeanor committed in another county, the warrant is unauthorized, and affords no ground for the detention of the petitioner.

The warrant which was issued by a justice of the peace in Washington county, and endorsed by Alderman Steele, of the city of Pittsburgh, would authorize the person to whom it was addressed, and who procured it to be endorsed, to arrest the person against whom it issued; and in default of bail, to take her before some alderman or justice of the peace of the county of Washington, to be dealt with according to law; but it could not justify her detention by the keeper of the common jail of Allegheny county, nor authorize the Court of Quarter Sessions, or a judge thereof, to direct the sheriff of Allegheny county to take her to the common jail of Washington county.

Equally clear is it, that the Court of Quarter Sessions of Allegheny county had no power to order the petitioner to be committed, in default of bail, for her appearance at the next Washington county Quarter Sessions. One arrested upon a warrant issued by a justice of the peace of another county, and endorsed in the county where he is found, if the offence is bailable, may, at his option, give bail in the county where he is arrested, for his appearance at the court where the offence is triable; but if he fails to do so, he cannot be committed to the jail of the county where he is found. When the Court of Quarter Sessions of Allegheny county ascertained that no offence had been committed within its jurisdiction, and that the offence charged to have been committed in the county of Washington was a misdemeanor, it should have discharged the prisoner; and then, if she had been arrested under a warrant from Washington county, she could either have entered into recognizance in the county of Allegheny for her appearance at the next Court of Quarter Sessions of Washington county, or, in default thereof, have been taken before some justice of the peace of Washington county, who would have proceeded in the same manner as though she had first been arrested in that county. If we should now permit the petitioner to be removed to the common jail of Washington county, under the warrant issued by the President of the Allegheny Common Pleas and Quarter Sessions for that purpose, the

[Commonwealth ex rel. Boyd v The Jailer.]

effect would be that she would be committed to jail without having had the preliminary inquiry before any tribunal of competent jurisdiction, which the law allows to every individual arrested upon oath or information before indictment is found.

The points that we decide are:

1. That a person cannot be lawfully arrested in one county for a misdemeanor alleged to have been committed in another, and taken to the county where the misdemeanor is alleged to have been committed, and delivered to the common jail of said county, under a warrant issued by a judge of the county where the arrest is made, directed to the sheriff thereof.

2. That a warrant issued by a justice of the peace in one county, and endorsed by an alderman of another city or county, charging a misdemeanor to have been committed in the county where the warrant issued, will not justify the detention of the alleged offender in the common jail of the city or county where the warrant was endorsed.

3. That where one is in actual custody, charged with the commission of a misdemeanor, and it is ascertained that the misdemeanor, if committed at all, was in another county, the Court of Quarter Sessions of the county where the prisoner is in custody, cannot legally require the prisoner to give bail for his or her appearance at the Court of Quarter Sessions of the county where the offence is alleged to have been committed, and in default thereof commit him or her to the common jail of the county where the inquiry is had.

As there is no legal cause of commitment set forth in the return to this writ of *habeas corpus*, the petitioner is entitled to her discharge.

And now, November 17, A. D. 1855, upon due consideration of the premises, it is ordered and adjudged, that the causes of detention, as set forth in the return to this writ of *habeas corpus*, are insufficient to authorize the respondent to restrain the relator of her liberty, and she is accordingly discharged.

The same decision was given in the case of George W. Boyd.

After the discharge of the parties, they were again arrested by James Mountz, to whom the warrants issued in Washington county were directed. By mutual consent of all parties, the court was desired to give judgment on the legality of the arrest, by virtue thereof the issuing of writs of *habeas corpus* being dispensed with, and they being considered as issued and returned.

The warrants were directed to James Mountz, the husband of Caroline Mountz, and appeared on their faces to have been issued "on oath of Jane Boyd, wife of George W. Boyd." The proof of the handwriting of the justice of the peace who issued them, appeared on the backs of the warrants to have been made by James Mountz, who, it was admitted, was the husband of

[M'Clure *v.* M'Clure.]

Caroline Mountz. These warrants were backed by Thomas Steele, Esq., an alderman of the city of Pittsburgh.

Chief Justice Lewis decided that the oath of a married woman would not sustain a warrant for the arrest of her husband for adultery; and also held, that the warrant for the arrest of Caroline Mountz was defective, inasmuch as the proof of the handwriting of the justice of the peace was made by James Mountz, the husband of Caroline Mountz. And thereupon both parties were discharged.